UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONNAKAY NAULT, | Civil Action No. |
| Plaintiff, | 16-11555-FDS |
| v. | |
| TODD BAZAREWSKY, RICHARD HARVEY, ROBERT FERREIRA, and TOWN OF MIDDLEBOROUGH, | |
| Defendants. | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is a civil rights action arising out of a confrontation between police officers and a grandmother in a grocery store parking lot. Plaintiff Donnakay Nault was at a Hannaford's Supermarket in Middleborough, Massachusetts, with her daughter and four grandchildren. Nault disciplined one of the children in the store by pulling on his ear. Another shopper witnessed the episode and called the police to report suspected child abuse.

Officers Todd Bazarewsky and Richard Harvey were dispatched to the store. Bazarewsky arrived first and found Nault in the parking lot attempting to load her groceries into her car. Bazarewsky approached her and began asking questions. Nault responded by expressing doubt that he was in fact a police officer. She initially declined to provide her license and registration and asked that Bazarewsky provide the name of his supervisor. After Bazarewsky threatened to arrest Nault for refusing to provide her license and registration, she relented.

Nault then attempted to close the driver's side of the door, allegedly hitting Bazarewsky in the shoulder. Eventually, Harvey pulled up in his marked police cruiser, and Bazarewsky went to speak with him while Nault remained inside her vehicle with the doors closed.

Nault was not arrested that day. However, she later received a summons and a copy of a criminal complaint filed in the Wareham District Court for assault and battery on a police officer and assault and battery with a dangerous weapon. At the district attorney's request, the charges were eventually dismissed.

Nault has now filed a complaint asserting claims for civil rights and constitutional violations and intentional infliction of emotional distress. Defendants have moved for summary judgment. For the following reasons, the motion will be granted in part and denied in part.

## I.  Background

Unless otherwise noted, the following facts are as set forth in the record and are undisputed.[1]

### A.  Factual Background

Donnakay Nault is a resident of Carver, Massachusetts. (Pl. SMF ¶ 1; Def. Resp. ¶ 1). On July 28, 2013, she was shopping with her adult daughter, Amanda, and her four grandchildren in the Hannaford's Supermarket in Middleborough, Massachusetts. (Donnakay Nault Dep. at 16). Her grandchildren were "running up and down the aisles, playing with things, grabbing things, [and] screaming their brains out." (*Id.* at 20-21). Nault attempted to speak with them, but they ignored her. (*Id.* at 18-19). Eventually, she "pulled on" a grandson's ear "to get

---

[1] Plaintiff disputes certain facts described in this section. However, to the extent that she has not offered any evidence in opposition, the Court will treat them as undisputed. See Fed. R. Civ. P. 56(c)(1).

him to pay attention and stop running up and down the aisles." (*Id.* at 47).[2]

Another shopper, Renee Garbitt, witnessed the incident. She approached Nault after the grandson "began to scream and cry." (Garbitt Dep. at 10-11). Garbitt told Nault, "[p]lease take your hands off that child." (*Id.* at 11). Nault ignored Garbitt, who then said something along the lines of Nault being a "bad mother." (Donnakay Nault Dep. at 21).[3]

Garbitt is a registered nurse and a licensed mental-health counselor. (Garbitt Dep. at 7). Because of her position, she is a "mandated reporter," and is required to report suspected child abuse or neglect. (*Id.* at 17). Garbitt asked a Hannaford's employee to use the store phone because her cell phone was not working. (*Id.* at 12). The store manager called 911 and handed the phone to Garbitt, who reported the incident as suspected child abuse. (*Id.*).

Middleborough police officers Todd Bazarewsky and Richard Harvey were dispatched to the store for a well-being check. (Def. Ex. 4 at 1; Def. Ex. 5 at 4). Bazarewsky arrived first and entered the supermarket to speak with Garbitt, who gave a physical description of Nault. (Def. Ex. 4 at 1).

Meanwhile, Nault had finished shopping. (Donnakay Nault Dep. at 23). She began loading the groceries into the back of her car. (*Id.* at 27). She was "half in the car and half out of the car" when Bazarewsky pulled up in a cruiser. (*Id.* at 29). The parties dispute whether Bazarewsky's cruiser was marked. (*Id.* at 30; Def. Ex. 4 at 1). Nault also contends that Bazarewsky "was in a uniform, but not one that I recognized as [belonging to] the Middleborough Police Department." (Donnakay Nault Dep. at 28).

---

[2] Earlier in her deposition, Nault denied pulling on that grandson's ear. (Donnakay Nault Dep. at 19) (Question: Now, at any time during the shopping trip did you pull on [the grandson's] ear at all? Answer: No.).

[3] Later, Amanda "overheard a woman saying something about calling the police" and left the store with her four children. (Amanda Nault Dep. at 13-14).

Bazarewsky approached Nault on the driver's side of her car. He told her that there had been a complaint about her conduct with a child in the supermarket. (Def. Ex. 4 at 1). He first asked whether she had accompanied anyone else to the supermarket that day. (Donnakay Nault Dep. at 30). Nault replied that she had shopped with her grandchildren and daughter, but that they had left earlier. (*Id.* at 31).

Bazarewsky then asked whether there had been an incident in the supermarket. (*Id.*). Nault responded that she "wished to remain silent" and asked who Bazarewsky's supervisor was. (*Id.* at 32). Nault contends that she "was not sure that he was a police officer" at that point; she recited the names of persons she believed to be Middleborough police officers, such as Lieutenant Dave Mackiewicz and Police Chief Bruce Gates, to test whether Bazarewsky was in fact an officer. (*Id.* at 32-33, 38). Bazarewsky stated that his supervisor's name was not relevant and asked Nault to provide her driver's license and vehicle registration. (Def. Ex. 4 at 1). Nault refused to produce either document and reiterated her request that Bazarewsky provide his supervisor's name. (*Id.*). Bazarewsky replied that she would be arrested unless she provided her license and registration, at which point she relented. (*Id.*; Donnakay Nault Dep. at 35). Bazarewsky then asked the name of her daughter, which she declined to provide. (Def. Ex. 4 at 1).

Nault then attempted to close the driver's side door of her car. (*Id.*; Donnakay Nault Dep. at 39). The parties dispute whether the car door struck Bazarewsky in the left shoulder. Defendants contend that Bazarewsky advised Nault that she could be arrested for assault for intentionally striking him with the door. (Def. Ex. 4 at 1).

Officer Richard Harvey then pulled up in a marked police cruiser behind Bazarewsky's car. (Donnakay Nault Dep. at 41). Bazarewsky walked away from Nault's car to speak with

4

Harvey while Nault locked herself in her car. (*Id.*). The two officers later returned to Nault's car, and Harvey knocked on her window and asked her to roll it down so he could speak with her. (*Id.* at 42). Nault declined and stated that she "could hear him just fine as things were." (*Id.*). She then asked for the names of the officers and their supervisor. (*Id.* at 43). Harvey identified himself and Bazarewsky and stated that the officer in charge that day was Lieutenant Robert Ferreira, who was not on the scene. (*Id.* at 43-44).

Harvey stated that he wanted to speak with Nault because the police had received a phone call concerning her behavior inside the supermarket. (*Id.* at 46). He then asked whether she was hiding her grandchildren in the vehicle and if she had physically touched them. (*Id.*). Nault replied that she was currently alone but that she had pulled on one of her grandson's ears earlier to stop him from misbehaving. (*Id.* at 46-47). Harvey then took Nault's license and registration, returned to his marked cruiser, and ran the documents through his computer. (*Id.* at 48-49). After returning, Harvey told Nault that he was going to contact the Department of Children and Families ("DCF"). (*Id.* at 50). The parties dispute whether Harvey advised Nault that she would receive a summons. (*Id.*; Def. Ex. 5 at 5).

Nault was neither arrested nor taken into custody on that day. (Compl. ¶ 27; Donnakay Nault Dep. at 50). Immediately afterward, she returned home and recounted the events to her daughter. (Donnakay Nault Dep. at 51-53).

The following day, on July 29, 2013, Amanda Nault went to the Middleborough police station and provided the names and dates of birth for her four children. (Def. Ex. 5 at 8). On July 30, both Bazarewsky and Harvey drafted reports detailing the incident at the supermarket and parking lot. (*Id.* at 5-7).

On August 7, 2013, the Wareham District Court issued a summons and criminal

complaint charging Nault with assault and battery on a police officer and assault and battery with a dangerous weapon. (Def. Ex. 7). At the time, Nault was employed as a nurse by Kindred Nursing Home in Wareham and by The Arbors Assisted Living in Stoughton. (Donnakay Nault Dep. at 63).

Nault was arraigned at the district court on August 27, 2013. (Def. Ex. 7). While waiting for her court appearance, she spent six hours in a holding cell; at some point during her detention, she was shackled. (Donnakay Nault Dep. at 92). Because she was in court that day, she was unable to work at Kindred Nursing Home and was fired the following day. (*Id.* at 64).

The parties dispute the circumstances surrounding Nault's firing. Defendants contend that Nault was fired because she failed to alert her employer that she would be in court on August 27. (Def. SMF ¶ 67). Nault contends that she was unable to call her employer because she was in custody. (Donnakay Nault Dep. at 64). Nault further alleges that she has continued to suffer adverse employment consequences because of the criminal charges. (*Id.* at 74).

Nault retained defense counsel, and the charges remained pending against her for approximately a year. Eventually, the charges were dismissed at the request of the prosecution. (*Id.* at 59). Before charges were dismissed, Nault made two or three additional court appearances. (*Id.*). In addition, Nault contends that she was "depressed" and was physically ill after learning of the criminal charges against her. (*Id.* at 94-95).

On January 27, 2016, Nault's counsel sent a presentment letter to the chair of the Board of Selectmen of Middleborough. (Def. Ex. 6). The letter demanded $100,000 in damages to compensate Nault for alleged violations of her constitutional and civil rights and various torts. (*Id.*). The town's insurer, the Massachusetts Interlocal Insurance Association ("MIIA"), denied Nault's claim on behalf of the town on May 19, 2016. (Compl. ¶ 45).

B.      **Procedural Background**

Nault filed suit on July 25, 2016, in the Plymouth County Superior Court. Her complaint alleges six counts: Counts 1 and 2 appear to bring claims under 42 U.S.C. § 1983 for constitutional violations by the individual defendants; Count 4 is a claim under section 1983 for conspiracy by the individual defendants; Count 5 is a claim under section 1983 against the town for failure to train and supervise its police force; Count 6 is a claim for intentional infliction of emotional distress by the individual defendants; and Count 7 is in substance a claim for vicarious liability against the town for the intentional torts of its employees.[4]

Defendants removed the action to this Court and have now moved for summary judgment.

## II.     **Legal Standard**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is

---

[4] The complaint does not include a Count 3. In addition, the complaint refers to the Town of Middleborough as the "Town of Middletown" in Count 7.

made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

**III. Analysis**

    **A. Count 1—State and Federal Claims for Civil Rights and Fifth and Sixth Amendment Violations**

Count 1 appears to assert claims for liability against the individual defendants under 18 U.S.C. § 1983 and Mass. Gen. Laws ch. 12, §§ 11H, I for violation of plaintiff's constitutional and civil rights. Specifically, it alleges that defendants violated Article 26 of the Massachusetts Declaration of Rights, Mass. Gen. Laws ch. 265, § 22, and the Fifth and Sixth Amendments. (Compl. ¶¶ 51-55). In her memorandum in opposition, plaintiff does not contest defendants' motion for summary judgment with respect to Count 1. Nevertheless, the Court will briefly address why summary judgment is warranted for defendants on this count.[5]

First, Article 26 of the Massachusetts Declaration of Rights states that "[n]o magistrate or court of law, shall demand excessive bail or sureties, impose excessive fines, or inflict cruel or unusual punishments." The complaint does not allege that any state court imposed an unfair penalty or fine on plaintiff; on the contrary, the charges against her were dismissed in August 2014. Therefore, there was no violation of plaintiff's Article 26 rights.

Second, Mass. Gen. Laws ch. 265, § 22 applies to "[r]ape, generally; weapons; punishment; eligibility for furlough; [and] education, training or employment programs." That provision is inapplicable to the present litigation.

---

[5] Count 1 also mentions false arrest and malicious prosecution. However, because those claims are also mentioned in Count 2, the Court will address them at a later point in this memorandum and order.

8

Third, plaintiff has not even sketched an argument as to what provisions of the Fifth and Sixth Amendments are applicable. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). To the extent that Count 1 asserts a claim for a *Miranda* violation, the Fifth Amendment requires that *Miranda* warnings be given prior to a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Plaintiff has not shown that the events of July 28, 2013, amounted to a custodial interrogation, and there is no evidence that her statements were ever used against her in a criminal prosecution. To the extent that Count 1 asserts a claim for violation of the Sixth Amendment's right to counsel during the events in the grocery store parking lot, plaintiff was not entitled to counsel until "the initiation of adversary criminal proceedings." *United States v. Bartelho*, 129 F.3d 663, 674 (1st Cir. 1997).

Accordingly, on Count 1, the motion for summary judgment will be granted.

### B. Count 2—Section 1983 Claims for Fourth and Fourteenth Amendment Violations

Count 2 alleges that the individual defendants violated the Equal Protection Clause of the Fourteenth Amendment, and falsely arrested and maliciously prosecuted plaintiff in violation of the Fourth Amendment. (*Id.* ¶¶ 56-59).[6] The individual defendants contend that plaintiff has failed to establish an equal-protection violation, that there was no false arrest or malicious prosecution, and that in any event they are entitled to qualified immunity. (Mem. in Supp. at 3-10).

#### 1. Equal Protection Violation

The Equal Protection Clause of the Fourteenth Amendment generally provides that

---

[6] There are no claims asserted in the complaint for common-law false arrest or malicious prosecution.

9

similarly situated persons are entitled to receive similar treatment at the hands of government actors. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal-protection claim, a plaintiff must show that she "was treated differently from others similarly situated . . . based on impermissible considerations." *Clark v. Boscher*, 514 F.3d 107, 114 (1st Cir. 2008) (citation and quotation marks omitted). The Supreme Court has held that differential treatment based on suspect classifications (race, national origin, religion, or alienage) is subject to strict scrutiny; differential treatment based on quasi-suspect classifications (gender or illegitimacy) is subject to intermediate scrutiny; and differential treatment based on all other classifications must simply survive a rational-basis inquiry. *Clark v. Jeter*, 486 U.S. 456, 461 (1988).

Plaintiff's equal-protection claim fails because there is no evidence that she was treated any differently from others similarly situated, regardless of classification. Accordingly, the motion for summary judgment will be granted as to that claim.

### 2. **False Arrest**

"In assessing section 1983 claims for false arrest, courts look to the law of the state in which the arrest occurred." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 87 (E.D.N.Y. 2016) (citing *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015)). In Massachusetts, the elements of a false-arrest claim are "(1) the defendant[s] intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the defendant[s] had no privilege to cause the confinement." *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3 n.6 (1st Cir. 1995).

As an initial matter, the Court must determine whether plaintiff was "confined" or

"arrested."[7] It is undisputed that plaintiff was not arrested on the day of the incident; rather, the Wareham District Court issued a summons and criminal complaint instructing her to appear for arraignment on August 27, 2013.[8] But plaintiff was jailed for six hours while awaiting arraignment. (Donnakay Nault Dep. at 92). And "[an] arrest . . . is . . . an order holding a person in custody until [arraignment]." Cypher, 30 Mass. Prac., Criminal Practice & Procedure § 3:6 (4th ed.). Here, the arrest was a direct consequence of the filing of the criminal complaint, even though a summons, rather than an arrest warrant, was issued. Therefore, the Court finds that for the purpose of making a false-arrest claim, plaintiff here was in fact arrested.

Defendants contend that Bazarewsky had probable cause for the arrest. The existence of probable cause will defeat a false-arrest claim. *See Santiago v. Fenton*, 891 F.2d 373, 383 (1st Cir. 1989) ("[A]t the foundation of all the claims [including false arrest and § 1983] is the necessity that the arrest be supported by probable cause."); *Felix v. Lugas*, 2004 WL 1775996 at *2 n.6 (D. Mass. Mar. 2, 2004) ("Although lack of probable cause is not an element to a false arrest claim, its absence provides a sufficient basis to dismiss a false imprisonment or false arrest claim.") (internal citation omitted).

Defendants state that probable cause existed because plaintiff hit Bazarewsky's shoulder when she attempted to close her car door. However, there is a genuine question of material fact as to whether she actually hit Bazarewsky. Plaintiff testified at her deposition that the car door never struck Bazarewsky, whereas Bazarewsky reported that it did (Donnakay Nault Dep. at 39-

---

[7] In their memoranda, the parties do not address whether the elements of a false-arrest claim have been established.

[8] In Massachusetts, courts are instructed to issue summons rather than arrest warrants whenever possible. *See* Mass. R. Crim. P. 6(a)(1); Cypher, 30A Mass. Prac., Criminal Practice & Procedure § 18:6 (4th ed.); *see also id.* § 18:8 (arrest warrants will issue only where the court has "reason to believe that the defendant will not appear on a summons.").

40; Def. Ex. 4 at 1). A reasonable jury could conclude that plaintiff was telling the truth and that Bazarewsky fabricated the incident such that there was no probable cause. The motion for summary judgment with respect to the Fourth Amendment claim based on a theory of false arrest will accordingly be denied.

### 3. Malicious Prosecution

The elements of a common-law cause of action for malicious prosecution are "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001). A plaintiff "also must show a deprivation of a federally-protected right" to "transform malicious prosecution into a claim cognizable under section 1983." *Id.* Plaintiff appears to contend that she was "seized" in violation of the Fourth Amendment during the initial incident and subsequent state-court appearances and that Bazarewsky fabricated the claim of assault and battery in retribution for her refusal to answer his questions.

Defendants contend that plaintiff has failed to show a deprivation of a federally-protected right. The First Circuit has stated that "[a]bsent any evidence that [a plaintiff] was arrested, detained, restricted in his travel, or otherwise subject to a deprivation of his liberty before the charges against him were dismissed, the fact that he was given a date to appear in court is insufficient to establish a seizure within the meaning of the Fourth Amendment." *Britton v. Maloney*, 196 F.3d 24, 30 (1st Cir. 1999). Where the "offending legal process" comes in the form of a "subsequent charging document," as is the case here, the "sum of post-arraignment deprivations [constitutes] the seizure." *Nieves*, 241 F.3d at 54. Based on *Britton*, the mere fact

that plaintiff was required to make multiple court appearances to defend herself is not enough to constitute a "seizure." As noted, plaintiff was locked up for six hours in jail while awaiting arraignment. However, she was jailed *before* being arraigned. Furthermore, there is no evidence in the record of any post-arraignment limitation on her liberty.[9] Therefore, there was no post-arraignment seizure under the meaning of the Fourth Amendment.

Accordingly, to the extent that plaintiff claims a Fourth Amendment violation based on a theory of malicious prosecution, the motion for summary judgment will be granted.

### 4. Qualified Immunity of Individual Officers

Summary judgment in favor of the defendant officers as to the § 1983 claims may be warranted if the officers are entitled to qualified immunity. The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has articulated a two-part test for determining qualified-immunity. *Pearson v. Callahan*, 555 U.S. 223 (2009). *See Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009). The relevant inquiries are (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.* The qualified-immunity doctrine "leaves ample room for mistaken judgments." *Berthiaume v. Caron*, 142 F.3d 12, 15 (1st Cir. 1998) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

---

[9] In her opposition memorandum, plaintiff contends that she could not leave the state during the pendency of the criminal action. (Mem. in Opp. at 6). However, there is no evidence of any travel restriction in the record. In addition, although plaintiff cites her firing from Kindred Nursing Home as a seizure, such employment or financial consequences do not constitute a Fourth Amendment seizure. *See Harrington v. City of Nashua*, 2009 WL 1744569, at *6 (D.N.H. June 19, 2009), *aff'd* 610 F.3d 24 (1st Cir. 2010).

As shown above, plaintiff has made out a section 1983 claim for a Fourth Amendment violation based on a theory of false arrest. However, there is no evidence that either Harvey or Ferreira violated plaintiff's constitutional rights, or even that they acted in bad faith. Neither officer witnessed the first few moments of the July 28, 2013 incident, during which Bazarewsky was allegedly assaulted. In addition, plaintiff has failed to produce evidence that Harvey or Ferreira knew that Bazarewsky fabricated the claim of assault and battery. Their belief that plaintiff committed the crime would have stemmed entirely from Bazarewsky's say-so; however, believing the word of a fellow officer over a civilian, at least in these circumstances, is at most a mistaken judgment, not a constitutional violation.

By contrast, plaintiff has established a question of material fact as to whether Bazarewsky is entitled to qualified immunity. If in fact plaintiff never struck him with her car door, then there was clearly no probable cause for the resulting criminal charges.

The Court accordingly finds that defendants Harvey and Ferreira are entitled to qualified immunity, and will grant them summary judgment on plaintiff's § 1983 claims on that basis. The claim of qualified immunity as to defendant Bazarewsky will be denied.

### C. Count 4—Section 1983 Claim for Conspiracy

Count 4 is a claim for liability against the individual defendants under section 1983 for conspiracy to violate her federally protected rights. The complaint appears to allege that the individual defendants agreed to fabricate evidence against her, resulting in unwarranted criminal charges. (Compl. ¶¶ 60-63).

"A civil rights conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and

an overt act that results in damages." *Santiago*, 891 F.2d at 389 (citation and internal quotation marks omitted). To recover on a conspiracy claim, a plaintiff "must show an actual abridgement of some federally-secured right." *Torres-Rosado v. Rotger-Sabat*, 335 F.3d 1, 14 (1st Cir. 2003) (quotation marks omitted). In addition, a plaintiff must establish the existence of a conspiratorial agreement. *See Nieves*, 241 F.3d at 53 (citing *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988)).

Plaintiff here has produced no evidence showing that a conspiratorial agreement existed. There is no evidence that the individual defendants communicated with one another for the purpose of depriving plaintiff's constitutional and civil rights, or even tacitly agreed to do so. Plaintiff merely offers conclusory allegations that a conspiracy existed because Bazarewsky and Harvey filed and prepared "false" police reports and that Ferreira approved the resulting criminal complaint. (Compl. ¶ 62). In her opposition memorandum, plaintiff contends that "[u]nder the liberal notice pleading standard applicable to civil rights action[s] pursuant to [Rule 8(a)]" the Court should find that the "allegations and facts presented are sufficient to support a [conspiracy] claim." (Mem. in Opp. at 9). However, because this is a motion for summary judgment, plaintiff cannot merely rely on the pleadings; she must offer evidence in support of her position. Fed. R. Civ. P. 56(a).

Accordingly, as to Count 4, the motion for summary judgment will be granted.

### D.  Count 5—Section 1983 Claim Against Town of Middleborough

Count 5 is a claim for liability against the Town of Middleborough under section 1983. Specifically, the complaint alleges that Middleborough, through its then-Police Chief, Bruce Gates, (1) failed to implement constitutional identification procedures, (2) failed to ensure that officers would not fabricate evidence or falsify police reports, and (3) failed to provide adequate

15

training and supervision for its police officers. (Compl. ¶¶ 64-65).

To establish municipal liability, a plaintiff must show that "the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95, (1978). Thus, the plaintiff is required to demonstrate both the existence of a policy or custom and a "direct causal link" between that policy and the alleged constitutional deprivation. *Canton*, 489 U.S. at 385; *see also Monell*, 436 U.S. at 694 (policy must be the "moving force [behind] the constitutional violation"). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Plaintiff's claim for municipal liability rests principally on the town's alleged failure to train and supervise its police officers. A claim against a municipality under § 1983 is "most tenuous where [it] turns on a failure to train." *Id.* To give rise to liability in such an action, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *Canton*, 489 U.S. at 388). *See also Young v. City of Providence*, 404 F.3d 4, 26-27 (1st Cir. 2005) (holding that, under *Monell*, "any proper allegation of failure to train . . . must allege that [the officer's] lack of training caused him to take actions that were objectively unreasonable" and that "the identified deficiency in [the training program was] closely related to the ultimate injury.").

The bar for establishing "deliberate indifference" in connection with a failure to train claim is quite high, and the evidence here falls well short of it. In her opposition memorandum,

plaintiff points to only three pieces of evidence that she contends support that claim.

First, she contends that the Middleborough town manager, Board of Selectmen, MIIA, and police department did not further investigate the July 28, 2013 incident. (Mem. in Opp at 12). Second, she contends that she did not believe Bazarewsky was a police officer because he was driving an unmarked cruiser, wore a police uniform with which she was unfamiliar, and refused to identify himself, giving her "pause from cooperating further." (*Id.* at 13).[10] Third, Joseph Perkins, the current chief of the Middleborough police department, testified at his deposition that there are no annual evaluations of all police personnel. (Perkins Dep. at 33).

That evidence is not sufficient to support an inference that Middleborough failed to train or supervise its police officers. As set forth above, even giving every reasonable inference to plaintiff, at most the evidence suggests that Bazarewsky fabricated the claim of assault and battery with a car door. However, as the First Circuit has stated, an isolated instance of police misconduct is insufficient to warrant section 1983 liability against the municipality. *See Calvi v. Knox Cty.*, 470 F.3d 422, 429 (1st Cir. 2006) ("Showing that a single individual received inadequate training is insufficient for municipal liability to attach; the training program as a whole must be found faulty."). Plaintiff has offered no evidence of any other incidents of police misconduct, and the only policies mentioned in the evidentiary record are that police officers do not arrest individuals until they "investigate, determine, [and] establish probable cause" and that officers record reports after each incident. (Perkins Dep. at 24, 43).

Therefore, as to Count 5, the motion for summary judgment will be granted.

---

[10] Defendants contend that Bazarewsky was driving a marked cruiser. (Def. SMF ¶ 22; Garbitt Dep. at 15). In any event, it is undisputed that plaintiff immediately recognized Harvey as a legitimate police officer and that he identified himself and Bazarewsky. (Donnakay Nault Dep. at 41, 43-44).

17

### E. Count 6—Intentional Infliction of Emotional Distress

Count 6 alleges intentional infliction of emotional distress ("IIED") by the individual defendants. To state a claim for IIED under Massachusetts law, a complaint must allege:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency[,] and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable [person] could be expected to endure it.

*Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976) (citations and internal quotation marks omitted); *accord Brown v. Hearst Corp.*, 54 F.3d 21, 27 (1st Cir. 1995).

Defendants contend that plaintiff has failed to offer any evidence in support of the third and fourth elements of the IIED claim. But assuming, as the Court must, that plaintiff's allegations are true, her claim is that a police officer deliberately fabricated a claim of assault and battery as an act of retribution against her. In her deposition, plaintiff testified that she was "depressed" and threw up for "three to three-and-a-half weeks" after receiving the summons from the Wareham District Court. (Donnakay Nault Dep. at 92). She was later incarcerated for six hours and (according to her) lost her job as a result. Under the circumstances, that is sufficient evidence for the claim against Bazarewsky to survive summary judgment.

Accordingly, as to Count 6, the motion for summary judgment will be denied as to defendant Bazarewsky and otherwise granted.

### F. Count 7—Vicarious Liability

Count 7 purports to bring a claim for negligence against the Town of Middleborough. However, Count 7 substantively suggests that Middleborough is vicariously liable for the

intentional torts of the individual defendants. (Compl. ¶¶ 72-79).

This claim runs afoul of the Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. Laws ch. 258. Under the MTCA, public employers, including municipalities, are not liable for intentional torts committed by public employees. *See Armstrong v. Lamy*, 938 F. Supp. 1018, 1044 (D. Mass. 1996) (citing *Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274, 284-85 (1985)); Mass. Gen. Laws ch. 258, § 10(c) (stating that municipalities may not be sued based on "any claim arising out of an intentional tort, including . . . false imprisonment, false arrest, intentional mental distress, [and] malicious prosecution . . . ."). Plaintiff cannot circumvent the MTCA by pleading a vicarious liability claim as one grounded in negligence.

Therefore, as to Count 7, the motion for summary judgment will be granted.[11]

## G. Request to Reopen Discovery

In her memorandum in opposition, plaintiff requests that this Court reopen discovery to permit her to depose the individual defendants. (Mem. in Opp. at 18). On October 17, 2016, the Court entered a scheduling order specifying that all depositions, other than expert depositions, must be completed by April 28, 2017. (Docket No. 14). The Court later granted four extensions at plaintiff's request, eventually setting the deadline for fact discovery at August 11, 2017. (Docket Nos. 23, 30, 36, 39). More than six months have elapsed since that deadline passed.

---

[11] Defendants also contend that plaintiff has failed to comply with the presentment requirement set forth in Mass. Gen. Laws ch. 258, § 4. Under section 4, a plaintiff must first present her claims against a municipality in writing before filing a civil suit. The statute specifically states:

> A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer *within two years after the date upon which the cause of action arose . . . .*

(emphasis added). The incident occurred on July 28, 2013; the summons and criminal complaint were issued on August 7, 2013; and plaintiff was arraigned on August 27, 2013. Accordingly, at the latest, plaintiff had until August 27, 2015, to comply with the presentment requirement. However, the presentment letter was not made until January 27, 2016. Plaintiff contends that because the charges were not dismissed until August 2014, the limitations period should be tolled until that date. (Mem. in Opp. at 14). Because a municipality cannot be vicariously liable for the intentional torts of its employees, the Court need not address that argument.

Rule 56, which governs summary judgment, provides that a court may "allow time to obtain affidavits or declarations or to take discovery" if "a nonmovant shows . . . it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d)(2). Plaintiff's counsel had ample opportunity to depose Officers Bazarewsky, Harvey, and Ferreira. The Court extended discovery deadlines four times, and on April 19, 2017, defendants' counsel e-mailed plaintiff's counsel to offer the individual defendants for depositions in May. (Docket No. 56, Ex. 3). Later, on June 2, 2017, plaintiff's counsel e-mailed defendants' counsel and stated: "FYI we will not be deposing your clients." (*Id.*, Ex. 2). It would be highly inappropriate for the Court to reopen discovery after plaintiff's counsel deliberately chose not to depose the individual defendants within the discovery period. Accordingly, plaintiff's request to reopen discovery will be denied.

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment is GRANTED in part and DENIED in part. Specifically, summary judgment will be granted as to all defendants on Counts 1, 4, 5, and 7; granted as to defendants Harvey and Ferreira on Counts 2 and 6; granted as to defendant Bazarewsky on Count 2, to the extent the claim alleges an equal protection violation under the Fourteenth Amendment and unconstitutional seizure under the Fourth Amendment based on a theory of malicious prosecution; and otherwise denied.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: February 26, 2018     United States District Judge